UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| DENSO CORPORATION, a Japanese Corporation,<br><br>           Plaintiff,<br>    v.<br>Domain Name &lt;denso.com&gt;,<br>           Defendant.<br>_____/ | No. C 14-01050 LB<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR WAIVER OF SERVICE BY PUBLICATION, DENYING MOTION TO DISMISS, AND DENYING MOTION TO APPOINT COUNSEL**<br><br>[ECF Nos. 19, 22, 23] |

**INTRODUCTION**

Plaintiff Denso Corporation filed this action under the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), seeking to recover the domain name denso.com, from the current domain registrant, Densoft Consultancy Services Ltd. ("DCS"), which is located in the United Kingdom. *See* First Amended Complaint ("FAC"), ECF No. 26, ¶¶ 4, 29. There are a number of motions pending. First, Denso asks the court to waive the ACPA's service by publication requirement. *See* ECF No. 19. Second, the court received several e-mail messages with attached documents from a Yuri Yasmanov, who claims to be a director of DCS. *See* ECF Nos. 22-23. These include a motion to dismiss, ECF No. 22, and a motion to either (1) extend the case management deadlines to allow DCS to retain counsel or (2) appoint counsel for DCS, ECF No. 23. The court filed these documents for Mr. Yasmanov, which is the standard practice when the court receives substantive documents on an *ex parte* basis. For the reasons discussed below, the court

C 14-01050
ORDER

1 **DENIES** Denso's motion to waive the ACPA's service by publication requirement, and **DENIES**
2 Mr. Yasmanov's requests.

## STATEMENT

### I. BACKGROUND

Denso is a Japanese corporation with its principal place of business in Japan. FAC ¶ 1. It supplies advanced automotive technology, systems, and components for automakers, operates in 30 countries, and has about 130,000 employees. *Id.* ¶ 2. Denso previously owned the denso.com domain name, which it used in association with its website, its business, and corresponding DENSO trademarks. *Id.* ¶ 3. Denso.com is registered in a domain name registry that is operated by VeriSign, Inc. *Id.* VeriSign's principal place of business is in San Francisco, California. *Id.*

On March 6, 2000, Denso mistakenly allowed its registration of the denso.com domain to lapse. *See id.* ¶¶ 15-18. One week later, a Russian company registered the domain. *Id.* ¶ 19. The registrant subsequently transferred the ownership several times in an attempt to make it difficult for Denso to contact the real registrant. *Id.* ¶ 20.

Since 2001, Denso has made several attempts to reacquire the domain. *See id.* ¶¶ 21-30. It located and contacted the registrant in 2001. *Id.* ¶¶ 21-23. In 2003, Denso filed an administrative action under ICANN's Uniform Dispute Resolution Policy to recover the domain. *Id.* ¶¶ 5, 24. On November 3, 2003, the World Intellectual Property Organization arbitration panel ordered the domain to be transferred to Denso. *Id.* ¶ 25. Despite the WIPO ruling, the registrant and registrar refused to transfer the domain to Denso. *Id.* ¶ 26.

The registrant then filed a claim with the Russian Arbitrazh Court of the City of St. Petersburg and the Leningrad Region disputing Denso's right to the domain. *Id.* ¶ 27. After numerous appeals, Denso prevailed in the Russian Supreme Court in a published decision dated November 11, 2008. Still, the domain's registrant and registrar refused to transfer the domain to Denso. *Id.*

### II. PROCEDURAL HISTORY

Denso filed this action on March 6, 2014. *See* Complaint, ECF No. 1. The original complaint named denso.com as an in rem defendant and denso.com's then-unknown registrant as a Doe defendant. *See id.* ¶ 4. Denso explained that it could not identify the denso.com registrant "as they

are registered via a 'WHOIS privacy' service located in Russia." Complaint, ECF No. 1, ¶ 4. The Complaint asserted claims for (1) cyberpiracy under the ACPA, 15 U.S.C. § 1125(d)(1)(A), (2) conversion, (3) common law unfair competition, and (4) unfair competition under California Business and Professions Code § 17200. *Id.* ¶¶ 31-50.

On March 13, 2014, Denso moved for an order directing VeriSign to place the denso.com domain on "registry lock status," so that it could not be transferred, suspended, or otherwise modified during the pendency of this action without a court order. *See* Motion, ECF No. 7. The court granted Denso's motion on March 17, 2014. *See* Order, ECF No. 8.

On April 17, 2014, the court received a e-mail and letter allegedly from Alexey Gromov of Fiducia LLC, LATVIJAS PARSTAVNIECIBA, regarding this matter. *See* ECF No. 11. Mr. Gromov claims that Fiducia, which is located in Latvia, is the registrar of denso.com. *Id.* at 2. He states that Fiducia is seeking legal advice in connection with this matter and asks that "the court take no further action in this case and suspend a time-table for this case." *Id.*

On August 20, 2014, Denso filed a proof of service indicating that it mailed and e-mailed the Complaint and other pleadings in this case to the registrant, which was located in the United Kingdom. *See* Proof of Service, ECF No. 16. It also filed a Case Management Conference in which it explained that Denso's counsel had been contacted by an attorney named Steven Svoboda who had been retained by the "defendant." *See* CMC Statement, ECF No. 17 at 3. Mr. Svoboda said that he represented DCS, the company listed as the denso.com domain name registrant. *Id.* On August 18, 2014, Mr. Svoboda notified Denso's counsel that he no longer represented DCS in this proceeding. *Id.* Also on August 20, 2014, Plaintiffs filed a motion asking the court to waive the ACPA's service by publication requirement. *See* Motion for Waiver, ECF No. 19.

On August 21, the court received an e-mail message and attachments from a Yuri Yasmanov of DCS. *See* ECF No. 20. The attachments included a Case Management Statement in which Mr. Yasmanov makes legal arguments about the merits of Denso's case, and asks the court to dismiss Denso's complaint and award DCS damages, attorneys' fees, and costs. *Id.* The statement indicates that DCS decided "to insource this case to the in-house lawyers which can not be so keen on and familiar with the peculiarities of ACPA and other applicable US laws and regulations." *Id.* at 5.

1    On August 22, 2014, Alexei Gromov of Fiducia e-mailed another case management statement to
2 the court along with several attachments. *See* ECF No. 21 (filed by the court on August 26, 2014).
3    On August 27, 2014, DCS e-mailed two purported motions to the court. *See* ECF Nos. 22-23.
4 First, DCS sent a motion to dismiss. Motion to Dismiss, ECF No. 22. Second, DCS sent a motion
5 asking the court to vacate the case management conference that was scheduled for August 28, 2014
6 so that DCS would have time to retain new counsel, or alternatively, to appoint counsel for DCS.
7 Motion to Appoint Counsel, ECF No. 23. Both motions are signed by "Mr. Yuri Yasmanov,
8 Densoft Consultancy Services Ltd. Pro Se." Motion to Dismiss, ECF No. 22 at 2; Motion to
9 Appoint Counsel, ECF No. 23 at 2. The court later continued the Case Management Conference to
10 October 2, 2014. *See* 8/28/2014 Clerk's Notice, ECF No. 25.
11    On September 10, 2014, Denso filed the operative First Amended Complaint. FAC, ECF No.
12 26. The FAC drops the claims against the Doe Defendants and asserts only an in rem claim against
13 denso.com. *See* FAC, ECF No. 26. Denso also opposed both of DCS's motions. *See* Response to
14 Motion to Dismiss, ECF No. 27; Response to Motion to Appoint Counsel, ECF No. 28.
15    Finally, on September 17, 2014, Mr. Gromov filed another case management conference
16 statement on behalf of Fiducia. *See* ECF No. 29.

## ANALYSIS

18    This order addresses the following issues: (1) Mr. Yasmanov's and Mr. Gromov's attempts to
19 file documents on behalf of unrepresented business entities, including DCS's motion to dismiss and
20 motion to appoint counsel, and (2) Denso's motion to waive the ACPA's service by publication
21 requirement.

### I. BUSINESS ENTITIES MAY NOT APPEAR PRO SE

23    The court first addresses the issues arising Mr. Yasmanov's attempts appear on behalf of DCS
24 and Mr. Gromov's attempts to file case management conference statements on behalf of Fiducia.
25 Civil Local Rule 3-9(b) provides that "[a] corporation, unincorporated association, partnership or
26 other such entity may appear only through a member of the bar of this court." *Accord McGowan v.*
27 *Boek*, 402 F. App'x 287, 288 (9th Cir. 2010) (affirming dismissal of case because corporate plaintiff
28 was not represented by counsel) (collecting cases); *In re Highley*, 459 F.2d 554, 555 (9th Cir. 1972)

("A corporation can appear in a court proceeding only through an attorney at law.") (collecting cases). DCS and Fiducia, respectively, are U.K. and Latvian business entities. Accordingly, they may not appear in this action unless they retain appropriate counsel.

Denso contends that the court should strike DCS's motions from the record. *See* Opp'n to Motion to Dismiss, ECF No. 27 at 5; Opp'n to Motion to Appoint Counsel, ECF No. 28 at 4. The court agrees.

Under Rule 12(f), a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The purpose of a Rule 12(f) motion is to avoid spending time and money litigating spurious issues. *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973-74 (9th Cir. 2010). Motions to strike "are generally disfavored because the motions may be used as delaying tactics and because of the strong policy favoring resolution of the merits." *Barnes*, 718 F. Supp. 2d at 1170. The ultimate decision under Rule 12(f) lies within the sound discretion of the court. *See Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993), *rev'd on other grounds*, 51 U.S. 517, 534-35 (1994).

Federal courts have granted motions to strike in nearly identical circumstances to those in this case. *See Wolfe v. Rodriguez*, No. 13-60709-CIV, 2013 WL 6885176, *4-5 (S.D. Fla. Dec. 31, 2013) (affirming Bankruptcy Court finding that a party who assigned a lien "from himself and his wife in their corporate capacities, to himself, individually" lacked standing because the assignment agreement was an attempt to circumvent the requirement that corporations must appear through counsel, and striking the pleadings on that basis); *Lady Kelly, Inc. v. U.S. Sec'y of Agr.*, 30 C.I.T. 82, 84 (2006) ("Plaintiff's response to Defendant's motion to dismiss must be stricken from the record because a corporation may not appear *pro se,* and must appear in court by an attorney."); *United States v. Neman Bros. & Associates*, 17 C.I.T. 181, 181 (1993) (striking answer filed by pro se corporate defendant).

Accordingly, the court strikes DCS's motion to appear and motion to appoint counsel. DCS and Fiducia may not file documents in this case unless and until they are represented by attorneys admitted to the bar of this court.

## II. DCS'S MOTION TO DISMISS IS MOOT

Even if the court were to consider DCS's motion to dismiss, it would deny it as moot. After DCS e-mailed its motion to the court, Denso filed an amended complaint. *See* Docket. Because DCS's motion was directed to a complaint that is no longer operative, the motion is moot.

## III. DENSO'S MOTION TO WAIVE SERVICE BY PUBLICATION

In the FAC, Denso asserts one claim under the ACPA, 15 U.S.C. § 1125(d). The ACPA contains provisions designed to protect trademark owners from cybersquatters – individuals and entities that have registered domains containing a protected mark. *See* 15 U.S.C. § 1125. It allows the owner of a mark to file suit against a person who (1) "has a bad faith intent to profit from that mark . . . ; and (2) register, traffics in, or uses a domain name that violates rights in the protected mark. *Id.* § 1125(d)(1)(A). The ACPA also allows the owner of a protected mark to file an in rem action against a domain name upon a court finding that the mark owner either: (1) is not able to obtain in personam jurisdiction over a person who would have been a defendant under § 1125(d)(1), or (2) through due diligence was not able to find such a person under 15 U.S.C. § 1125(d)(1). *See* 15 U.S.C. § 1125(d)(2)(A). The relevant provisions state:

> **(2)(A)** The owner of a mark may file an in rem civil action against a domain name in the judicial district in which the domain name registrar, domain name registry, or other domain name authority that registered or assigned the domain name is located if–
>
> **(i)** the domain name violates any right of the owner of a mark registered in the Patent and Trademark Office, or protected under subsection (a) or (c) of this section; and
>
> **(ii)** the court finds that the owner–
>
> **(I)** is not able to obtain in personam jurisdiction over a person who would have been a defendant in a civil action under paragraph (1); or
>
> **(II)** through due diligence was not able to find a person who would have been a defendant in a civil action under paragraph (1) by–
>
> **(aa)** sending a notice of the alleged violation and intent to proceed under this paragraph to the registrant of the domain name at the postal and e-mail address provided by the registrant to the registrar; and
>
> **(bb)** publishing notice of the action as the court may direct promptly after filing the action.

15 U.S.C. § 1125(d)(2)(A). The mark owner can effect service of process if the court finds that there is no in personam jurisdiction and the plaintiff fulfills the notice requirements of subparagraph

1125(d)(2)(A)(ii)(II). *Id.* § 1125(d)(2)(B); *see Con-Way Inc. v. CONWAYRACING.COM*, No. 08-4263 SC, 2009 WL 2252128, at *2 (N.D. Cal. July 28, 2009). In an in rem action under the ACPA, a domain name is deemed to have its situs in the judicial district in which the domain name registrar, registry, or other domain name authority that registered or assigned the domain name is located. 15 U.S.C. § 1125(d)(2)(C)(i).

In its motion, Denso asks the court to waive the service by publication requirement of § 1125(d)(2)(A)(ii)(bb). *See* Motion for Waiver, ECF No. 19 at 4-5. It argues that service by publication is unnecessary because DCS already has actual notice of this action. *Id.* The court denies Denso's motion as prematurely filed.

Denso has not completed the prerequisites necessary for asserting an in rem claim. In order to bring an in rem action under the ACPA, Denso must prove, and the court must find, that the owner is unable to locate or obtain in personam jurisdiction over the person who should be the defendant in an in personam ACPA action under § 1125(d)(1). *See* 15 U.S.C. § 1125(d)(2)(A)(ii). Here, the defendant in an in personam action would be DCS. *See* Motion for Waiver at 4. Denso has located DCS. *See* Rodenbaugh Decl., ECF No. 19-1, ¶ 3. Thus, Denso can only proceed in rem if the court finds that Denso cannot obtain in personam jurisdiction over DCS. Denso has not asked the court for that finding and personal jurisdiction may not be an issue.

DCS's attempted filings suggest that it might not contest personal jurisdiction (and may already have waived its right to do so). DCS responded to the original complaint, which named the unidentified registrant as a Doe Defendant. *See* Complaint, ECF No. 1, ¶ 4. DCS obtained counsel to represent it (however briefly), attempted to appear pro se and file motions, and repeatedly contacted the court regarding this matter.

Other district court rulings suggest that it would be premature to grant Denso's motion. For example, in *Con-Way*, which Denso cites in support of its motion, the court granted a motion to waive the ACPA's service by publication requirement. *See* 2009 WL 2252128, at *3. Before granting the motion, the court explained that in an earlier motion, the plaintiff "requested that this Court find that it could not obtain in personam jurisdiction over a proper ACPA defendant, and this Court found that in personam jurisdiction was indeed lacking." *See id.* at *2. Denso has not yet

made that showing.  The court, therefore denies its motion without prejudice.

## CONCLUSION

The court **DENIES** without prejudice Denso's motion to waive the ACPA's service by publication requirement and **STRIKES** DCS's motions to dismiss and appoint counsel.

This disposes of ECF Nos. 19, 22, and 23.

**IT IS SO ORDERED.**

Dated: September 19, 2014



_____
LAUREL BEELER
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

C 14-01050
ORDER

8