UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| DENSO CORPORATION,<br><br>    Plaintiff,<br><br>    v.<br><br>Domain Name *denso.com*,<br><br>    Defendant. | Case No.  14-cv-01050 LB<br><br>**ORDER FINDING *IN REM* JURISDICTION**<br><br>[ECF No. 32] |

### INTRODUCTION

This is an *in rem* action under the federal Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d). (ECF No. 26 at 2 (¶ 24).)[1] Plaintiff Denso Corporation sues to recover the Internet domain name *denso.com* from its current registrant, Densoft Consultancy Services, Ltd. ("DCS"). Denso moves the court to find that there is *in rem* jurisdiction over the domain name under 15 U.S.C. § 1125d)(2). The court finds this matter suitable for determination without oral argument. *See* Civ. L.R. 7-1(b). For the reasons stated below, the court agrees that it may assert *in rem* jurisdiction over *denso.com* through ACPA, and so grants Denso's motion.

---

[1] Record citations are to documents in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

ORDER – 14-1050 LB

**JURISDICTION & VENUE**

Jurisdiction is laid under several statutes: 28 U.S.C. § 1331 — federal-question jurisdiction; 28 U.S.C. § 1338 — federal patent, copyright, and trademark laws; 15 U.S.C. § 1121 — trademarks; and, most specifically, 15 U.S.C. § 1125(d)(2) — *in rem* jurisdiction under ACPA. (ECF No. 26 at 3 (¶ 11).) Venue is proper in this district under 15 U.S.C. § 1125(d)(2)(C). *Denso.com* is registered in a domain-name registry operated by VeriSign, Inc. *See* (ECF No. 26 at 2 (¶ 3).) VeriSign has an office in San Francisco and to that extent is "located" in this district. *See* 15 U.S.C. § 1125(d)(2)(C)(i). VeriSign also stipulated to an order in this suit placing *denso.com* on "registry lock status," which prevents the domain name from being transferred, suspended, or otherwise modified (without a court order) until this lawsuit is over. *See* (ECF Nos. 7-8.) It thus appears that VeriSign could, if necessary, deposit in court "documents sufficient to establish control and authority regarding the disposition of the registration and use of the domain name." *See* 15 U.S.C. § 1125(d)(2)(C)(ii). Denso has consented to the undersigned's jurisdiction. (ECF No. 10.)

**STATEMENT**

**I.   FACTUAL BACKGROUND**

Denso is a Japanese corporation with its principal place of business in Japan. (ECF No. 26 ¶ 1.) It supplies advanced automotive technology, systems, and components for automakers, and operates in 30 countries. (*Id.* ¶ 2.) Denso previously owned the *denso.com* domain name, which it used in association with its website, its business, and corresponding DENSO trademarks. (*Id.* ¶ 3.) Denso's trademarks are registered with the U.S. Patent and Trademark Office and internationally. (*Id.*) *Denso.com* is registered in a domain-name registry that is operated by VeriSign, Inc. *See* (*id.* ¶ 12.) VeriSign has an office in San Francisco. (*Id.*)

In March 2000, Denso mistakenly allowed its registration of *denso.com* to lapse. (*See id.* ¶¶ 15-18.) One week later, a Russian company registered the domain. (*Id.* ¶ 19.) The registrant subsequently transferred the ownership several times, making it difficult for Denso to contact the real registrant. (*Id.* ¶ 20.)

Since 2001, Denso has made several attempts to reacquire the domain. *See* (*id.* ¶¶ 21-30). It located and contacted the registrant in 2001. (*Id.* ¶¶ 21-23.) In 2003, Denso filed an administrative action under ICANN's Uniform Dispute Resolution Policy to recover the domain. (*Id.* ¶¶ 5, 24.)[2] That same year, the World Intellectual Property Organization ("WIPO") arbitration panel ordered the domain transferred to Denso. (*Id.* ¶ 25.) Despite the WIPO ruling, the registrant and registrar refused to transfer the domain. (*Id.* ¶ 26.)

The registrant then filed a claim with the Russian Arbitrazh Court of the City of St. Petersburg and the Leningrad Region disputing Denso's right to the domain. (*Id.* ¶ 27.) After numerous appeals, Denso prevailed in the Supreme Court of the Russian Federation in a published decision dated November 11, 2008. Still the domain's registrant and registrar refused to transfer the domain to Denso. (*Id.*)

## II. PROCEDURAL HISTORY

Denso filed this action on March 6, 2014. (ECF No. 1 (complaint).) The original complaint named *denso.com* as an *in rem* defendant and *denso.com*'s then unknown registrant as a Doe defendant. *See* (*id.* ¶ 4). Denso explained that it could not identify the *denso.com* registrant "as they are registered via a 'WHOIS privacy' service located in Russia." (*Id.* ¶ 4.) The Complaint asserted claims for: (1) cyberpiracy under ACPA, 15 U.S.C. § 1125(d)(1)(A); (2) conversion; (3) common-law unfair competition; and (4) unfair competition under California Business and Professions Code § 17200. (*Id.* ¶¶ 31-50.)

Denso moved for an order directing VeriSign to place *denso.com* on "registry lock status," so that it could not be transferred, suspended, or otherwise modified during the pendency of this action without a court order. (ECF No. 7.) The court granted Denso's motion. (ECF No. 8.)

Denso mailed and e-mailed the Complaint and other pleadings in this case to the registrant, Densoft Consultancy, Ltd. ("DCS"), which was located in the United Kingdom. *See* (ECF No. 16.) It also filed a case-management statement in which it explained that Denso's counsel had been contacted by an attorney named Steven Svoboda who had been retained by the "defendant." *See*

---

[2] ICANN being the Internet Corporation for Assigned Names and Numbers.

ORDER – 14-1050 LB

3

1  (ECF No. 17 at 3.) Mr. Svoboda said that he represented DCS. (*Id.*) On August 18, 2014, roughly one month after he had contacted Denso, Mr. Svoboda notified Denso's counsel that he no longer represented DCS. (*Id.*)

In late August 2014, the court received three *pro se* emails with attachments from a Yuri Yasmanov of DCS. (ECF Nos. 20, 22-23.) The first of these was a case-management statement that made extended arguments about the merits of this case (ECF No. 20); the second contained a motion to dismiss (ECF No. 22); and the last asked the court to delay the proceedings until DCS could hire a lawyer or, alternatively, asked the court to appoint a lawyer to represent DCS (ECF No. 23). The court filed the latter two documents as motions on DCS's behalf. It then struck them on the rule that business associations cannot represent themselves *pro se* but must be represented by counsel. (ECF No. 30.)

Meanwhile, Denso filed the operative First Amended Complaint. (ECF No. 26.) The FAC drops the personal claims against the Doe Defendants and asserts only an ACPA *in rem* claim against *denso.com*. *See* (*id.*) On November 5, 2014, Denso filed the present motion asking the court to find that it has *in rem* jurisdiction over the *denso.com* domain under 15 U.S.C. § 1125(d)(2). (ECF No. 32.)

## GOVERNING LAW

ACPA allows a trademark owner to bring an *in rem* civil action when (broadly speaking) a domain name violates the owner's rights and the owner cannot obtain personal jurisdiction over the registrant of the domain name. 15 U.S.C. § 1125(d)(2).[3] The relevant provisions of ACPA state:

> (2)(A) The owner of a mark may file an in rem civil action against a domain name in the judicial district in which the domain name registrar, domain name registry, or other domain name authority that registered or assigned the domain name is located if —
>
> > (i) the domain name violates any right of the owner of a mark registered in the Patent and Trademark Office, or protected under

---

[3] For brevity, the court speaks in terms of "trademarks," but the relevant statutes cover protected "marks" generally, as well as "any word, term, name, symbol, or device, or any combination" of these that might infringe upon or dilute another "mark." *See* 15 U.S.C. § 1125(a), (c), (d)(1)(A).

>     subsection (a) or (c) of this section; and
>
>     (ii) the court finds that the owner —
>
>     (I)  is not able to obtain in personam jurisdiction over a person who would have been a defendant in a civil action under paragraph (1) . . . .

15 U.S.C. § 1125(d)(2)(A)(i)-(ii); *see Dynamis, Inc. v. Dynamis.com*, 780 F. Supp. 2d 465, 468-69 (E.D. Va. 2011); *Volkswagen, AG v. Volkswagentalk.com*, 584 F. Supp. 2d 879, 882 and n. 1 (E.D. Va. 2008) (elements of ACPA *in rem* action). Subsections 1125(a) and (c) recognize claims for, respectively, trademark infringement and dilution. ACPA's first provision, 15 U.S.C. § 1125(d)(1), creates a cause of action for "cybersquatting." This, in sum, is the bad-faith use of a domain name in order to profit from the goodwill of a protected mark belonging to someone else. *See* 15 U.S.C. § 1125(d).

That DCS is currently absent from this suit, and so has not opposed Denso's motion, does not affect the jurisdictional analysis. "[T]his Court is required to decide the jurisdictional issue 'whether or not a defendant formally opposes the court's assertion of *in rem* jurisdiction.'" *Graham & Buffet, Ltd. v. www.vilcabamba.com*, 2006 WL 851253, *2 (W.D. Wash. Mar. 30, 2006) (quoting in part *Porsche Cars N. Am., Inc. v. Porsche.net*, 302 F.3d 248, 257 (4th Cir. 2002)).

## ANALYSIS

The question of *in rem* jurisdiction under ACPA — at least as that question arises here — can be viewed as having two basic elements. First, the ACPA plaintiff must allege an infringement or dilution claim under 15 U.S.C. § 1125(a) or (c). Second, the plaintiff must show that the court cannot obtain personal jurisdiction over someone who "would have been a defendant" in an infringement or dilution suit. 15 U.S.C. § 1125(d)(2)(A); *Volkswagentalk.com*, 584 F. Supp. 2d at 882 n. 1. The court finds that, at least for jurisdictional purposes, Denso has sufficiently alleged claims for both trademark infringement and dilution under § 1125(a) and (c), as well as for cybersquatting under § 1125(d)(1). The court also finds that DCS, the party who currently has the *denso.com* domain name registered, would be a proper defendant in an infringement or dilution suit. The operative issue is thus whether Denso could obtain *in personam* jurisdiction in this court

over DCS. *See Graham & Buffet*, 2006 WL 851253 at *2 ("For an *in rem* action [under ACPA] to proceed, the court must find that the owner of the mark is not able to obtain *in personam* jurisdiction over the would-be defendant.") (quoting *Shri Ram Chandra Mission v. Sahajmarg.org*, 139 F. Supp. 2d 721, 723 (E.D. Va. 2011)).

On the current record, and specifically for purposes of 15 U.S.C. § 1125(d)(2), the court finds that it cannot obtain personal jurisdiction over DCS. DCS appears to be a foreign entity. Domain-registration information for *denso.com* gives an address for DCS in the United Kingdom. (ECF No. 32-2 at 6.) DCS's letters to this court show the same U.K. address. (ECF No. 20 at 1; ECF No. 23 at 1-3.) The only contact that DCS appears to have had with California consists in registering or maintaining the domain name *denso.com* through VeriSign. This is insufficient to establish personal jurisdiction over DCS. Or, more precisely, these facts suffice to show that, under 15 U.S.C. § 1125(d)(2)(A)(ii)(I), Denso "is not able to obtain *in personam* jurisdiction" over DCS in this court. *See Harrods Ltd. v. Sixty Internet Domain Names*, 110 F. Supp. 2d 420, (E.D. Va. 2000); *Volkswagentalk.com*, 584 F. Supp. 2d at 883; *Continental Airlines, Inc. v. continentalairlines.com*, 390 F. Supp. 2d 501, 507 (E.D. Va. 2005).

This does not end the inquiry. Earlier in this lawsuit, DCS took affirmative steps to defend itself. It hired a lawyer to represent it — but, within about a month, that lawyer withdrew. *See* (ECF No. 17 at 3; ECF No. 32-2 at 8-9, 12.) The court later received several *pro se* emails sent from the United Kingdom on DCS's behalf. (ECF Nos. 20, 22-23.) The first of these styled itself a case-management statement (ECF No. 20); the second contained a motion to dismiss (ECF No. 22); and the last asked the court to delay the proceedings until DCS could hire a lawyer or, alternatively, asked the court to appoint a lawyer to represent DCS (ECF No. 23). The court filed the latter two documents as motions on DCS's behalf. It then struck them on the rule that business associations cannot represent themselves *pro se* but must appear through counsel. (ECF No. 30 at 4-5.)

The operative question is thus: Do DCS's acts constitute consenting to, or waiving objections to, personal jurisdiction in this court? *See generally, e.g., Ins. Co. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702-06 (1982) (discussing consent and waiving objections to personal jurisdiction). The court thinks that they do not.

6
ORDER – 14-1050 LB

It is established law, both more recently under the ACPA and across the longer span of traditional *in rem* jurisprudence, that appearing, or even taking limited substantive steps, in an *in rem* case does not confer personal jurisdiction over someone who claims an interest in the subject property. *See Dynamis*, 780 F. Supp. 2d at 470 ("limited appearance" and filing a motion to dismiss in ACPA *in rem* suit did not constitute consent to personal jurisdiction); *Caesars World, Inc. v. Caesars-Palace.com*, 112 F. Supp. 2d 505, 509 (E.D. Va. 2000) ("*in personam* jurisdiction cannot be based merely on an appearance in an *in rem* action") (citing *Harrods Limited*, 110 F. Supp. 2d at 422).

Particularly given the current posture of this case — in which all personal claims have dropped out, and only the ACPA *in rem* claim remains — DCS's limited acts cannot be read as subjecting it to personal jurisdiction. This is true even if one considers the two DCS motions that were struck from the record. Consider first that DCS (by its own statement) has known of this suit since at least June 2, 2014. (ECF No. 20 at 6.) The court struck its improperly *pro se* filings on September 19, 2014. Even from that later date, and certainly from the earlier, DCS has had time to participate in this lawsuit, fully and normally, through retained counsel, were it inclined to do so. The material that DCS submitted moreover suggests that, if the company chose to become active in this case, it would likely challenge personal jurisdiction. DCS's motion to dismiss complained that it had not had "an adequate opportunity . . . to challenge the improper venue and Magistrate Judge Jurisdiction." (ECF No. 20 at 2.) It seems fair to conclude from this that, were it to participate in this suit, DCS would likely raise preliminary challenges to the court's jurisdiction and venue. At least, and what is crucial for present purposes, DCS's filings do not suggest that it would waive such objections and consent to personal jurisdiction in this forum.

Jurisdiction being uniquely important, the question of DCS's apparent contact with this district warrants elaboration. The point is simple but seems worth making. On normal "minimum contacts" principles, it is conceivable that by registering *denso.com* through VeriSign — which has an office "located" in this district — DCS might have submitted to "specific" personal jurisdiction in this court, thereby subjecting itself to a lawsuit, like this one, that involves only the domain name. *See generally, e.g., Helicopteros Nacionales v. Hall*, 466 U.S. 408, 414-15 and nn. 8-9 (1984) (distinguishing "specific" from "general" personal jurisdiction). It nonetheless seems

7
ORDER – 14-1050 LB

obvious that this lone contact cannot defeat *in rem* jurisdiction under § 1125(d)(2). ACPA specifically creates an *in rem* cause of action, laying both that form of jurisdiction, and venue, in the district where "the domain name registrar, registry, or other domain name authority that registered or assigned the domain name is located." 15 U.S.C. § 1125(d)(2)(A), (C). Consequently, in most or all potential ACPA *in rem* suits, a cybersquatter will have the specific contact of having registered the subject domain name with an entity located in the proposed forum. The possibility of specific personal jurisdiction, in other words, would almost always defeat *in rem* ACPA jurisdiction. There would be no *in rem* ACPA suit, and in this crucial respect ACPA would be made pointless. As Justice Jackson wrote many years ago:

> [C]ourts will construe the details of an act in conformity with its dominating general purpose, will read text in the light of context and will interpret the text so far as the meaning of the words fairly permits so as to carry out in particular cases the generally expressed legislative policy.

*SEC v. Joiner*, 320 U.S. 344, 350-51 (1943). The court thus finds that DCS's contact with this district through VeriSign does not preclude a finding that, under § 1125(d)(2), Denso "is not able" to obtain personal jurisdiction over DCS — and thus does not bar *in rem* jurisdiction under ACPA.

This is consistent with the approach that courts have taken to ACPA *in rem* jurisdiction. A straightforward example is *Continentalairlines.com*, *supra*. That case arose in the Eastern District of Virginia, where VeriSign is headquartered, and which, perhaps for that reason, is the district that has handled the bulk of reported ACPA litigation. The subject domain name in that case was registered through VeriSign; the would-be defendant (the alleged cybersquatter) was located in South Korea. *Continentalairlines.com*, 390 F. Supp. 2d at 503-04. Despite the VeriSign registration, the district court held that the South Korean company "manifestly" had "no known contacts" with the Virginia forum. *Id.* at 507. It thus "present[ed] little difficulty" for the court to conclude that it lacked personal jurisdiction under § 1125(d)(2)(A). *Id.* The court asserted *in rem* jurisdiction and eventually ordered VeriSign to transfer the domain name away from the South Korean company. *Id.* at 506-09.

Finally, the broader context of this dispute impacts the court's thinking. In passing ACPA,
> Congress was disturbed by the increasing number of individuals who registered domain names in violation of trademark rights and then eluded trademark

8
ORDER – 14-1050 LB

enforcement because either they could not be found or the trademark owner was unable to acquire *in personam* jurisdiction over them. Accordingly, in enacting the ACPA, Congress included an *in rem* provision to allow remedies for violations of the statute by anonymous or "absent cybersquatters."

*Standing Stone Media, Inc. v. Indiancountrytoday.com,* 193 F.Supp.2d 528, 531 n. 2 (N.D.N.Y. 2002) (internal citations omitted). This case seems almost exactly the sort of situation at which ACPA aims. Denso alleges that it has pursued DCS internationally to regain the *denso.com* domain name. It has twice received favorable judgments — from the World Intellectual Property Organization and from the Supreme Court of the Russian Federation — and yet has been unable to reacquire the domain. This court expresses no view on the merits of this case. Maybe Denso will not be able to prove that DCS has cybersquatted. But the question before the court is different and more limited. The court holds that, on the record before it, under 15 U.S.C. § 1125(d)(2), it has *in rem* jurisdiction over the domain name *denso.com*. This case may accordingly proceed.

This disposes of ECF No. 32.

**IT IS SO ORDERED.**

Dated: December 17, 2014.

_____

Laurel Beeler
United States Magistrate Judge